**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RAYMOND HARGROVE,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 20-CV-0610** |
| | : | |
| **COMMISSIONER BLANCHE** | : | |
| **CARNEY,** *et al.*, | : | |
| **Defendants.** | : | |

**<u>MEMORANDUM</u>**

Plaintiff Raymond Hargrove, a pretrial detainee incarcerated at the Curran-Fromhold Correctional Facility ("CFCF") in Philadelphia, brings this *pro se* civil action pursuant to 42 U.S.C. § 1983, based on the conditions of his confinement. His Complaint is also construed as raising a claim under Title II of the Americans with Disabilities Act ("ADA") based on his termination from a work assignment. Hargrove seeks to proceed *in forma pauperis*.

**I.     FACTUAL ALLEGATIONS**

Hargrove's Complaint names four Defendants: (1) Commissioner Blanche Carney; (2) the City of Philadelphia; (3) Sergeant Cook; and (4) Correctional Officer Bradly, who is identified as working in the law library at CFCF. Hargrove sued the individual Defendants in their individual and official capacities. His claims are primarily based upon three incidents, two involving interactions with Defendant Bradly and another involving an interaction with Defendant Cook.

Hargrove alleges that on February 22, 2019, Sergeant Cook was performing random inspections on his unit and searched his cell. Cook ordered Hargrove to remove items from the wall and table, and Hargrove contends that he complied with those orders. He indicates that Cook became irritated with him and she slammed her own arm and shoulder "into the door

1

repeatedly and very hard."  Hargrove contends that, despite Cook harming herself, she falsely

accused him of harming her.  He alleges that he spent time in the restricted housing unit

("RHU") as a result of those accusations.  It also appears that some of Hargrove's property,

including pictures and commissary items, was taken in connection with the search.  Hargrove

alleges that following "a pragmatic investigation" into Cook's accusation, the "evidence and or

tape" revealed his innocence.  Hargrove alleges that he was supposed to be released from the

RHU on March 4, 2019,[1] but the staff would not move him and he spent 30 days in the RHU.

Hargrove contends that he "told them [he] didn't feel safe" although it is not clear who the

"them" refers to, and suggests he was placed "in imminent danger" but does not elaborate.[2]

Hargrove also alleges two different incidents pertaining to Defendant Bradly.  First, he

alleges that he has been having trouble accessing the law library at CFCF.  Bradly informed

Hargrove that inmates could visit the law library two days a week for an hour and Hargrove

responded, "that's unconstitutional" and "turned to the Deputy Warden for intervention and

transitory recourse."  Hargrove relatedly contends that Bradly "denied [him] a sufficient amount

of [a] day for legal research on [his] case."

Hargrove also alleges that on December 13, 2019, he was collecting trash as part of a

work assignment.  According to Hargrove, Defendant Bradly addressed him through a speaker

on the wall, but he could not hear her because he suffers from a hearing impairment.  Hargrove

also alleges that Bradly spoke to him in a "hostile and humiliating tone."  It appears from the

Complaint that Hargrove was terminated from his work assignment as a result of this incident.

---

[1] Documents attached to the Complaint indicate both that Hargrove was "exonerated" of the disciplinary charge on March 5, 2019, and that he was "exonerated" and "released" on March 4, 2019.

[2] If Hargrove intended to bring a "failure to protect" claim based on his allegation that he felt unsafe in the RHU, that claim is not adequately pled.  *See Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (per curiam) (detainee alleging failure to protect must establish deliberate indifference to safety).

Hargrove indicates that he filed grievances about the matters discussed above and that Commissioner Carney received certain of his grievances on July 12, 2019.  This allegation appears to concern a letter Hargrove sent to Carney in which he complained that staff at CFCF had not adequately responded to four of his grievances.  Attached to the Complaint is a response from the Commissioner noting that Hargrove had been assigned a job on July 3, 2019 and that the other matters were considered resolved.  The letter informed Hargrove that any further concerns could be directed to the "uniform and social service staff" to allow CFCF to address his concerns.  Hargrove nevertheless contends that Carney "attempted to remedy the least important" of his issues, "conducted a biased investigation" and "refused to discipline staff members" who lied.  He also generally alleges that Carney failed to train her employees.

Based on the above allegations, Hargrove primarily brings constitutional claims pursuant to § 1983.  He seeks damages and unspecified injunctive relief.  He also indicates he saw a psychiatrist and was prescribed medication to address his "anxiety from this undesirable ordeal."[3]  Hargrove also attached various grievances and other documents to his Complaint in support of his claims.[4]

## II.    STANDARD OF REVIEW

Hargrove's motion for leave to proceed *in forma pauperis* will be granted because it

---

[3] Attachments to Hargrove's Complaint also discuss or reflect medical care he received at CFCF.  However, the Court does not understand Hargrove to be raising claims against the Defendants based upon medical needs.  In any event, to state such a claim, a detainee must establish that the defendants acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety.  *See Edwards*, 663 F. App'x at 135 ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).  Edwards has not alleged any such deliberate indifference here, especially since his Complaint and attachments reflect that he received treatment for medical and psychiatric issues.

[4] Some of these documents concern matters that are not discussed in the allegations of the Complaint and do not appear to concern Defendants' conduct.  Hargrove also filed additional exhibits after submitting his Complaint (ECF Nos. 7, 8 & 9), which likewise address conduct that is not discussed in the body of the Complaint and that does not clearly involve the named Defendants.

appears that he is incapable of paying the fees to commence this civil action.[5]  Accordingly, 28

U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Complaint to be dismissed if it fails to

state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by

the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure

12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the

Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to

state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quotations omitted).  Conclusory allegations do not suffice.  *Id.*  As Hargrove is proceeding *pro
se*, his allegations are construed liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.    DISCUSSION

### A.  Section 1983 Claims

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

For the following reasons, Hargrove has failed to state a claim.

#### 1.   Claims Against the City of Philadelphia and Official Capacity Claims

Claims against City officials named in their official capacity are indistinguishable from

claims against the City.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-

capacity suits . . . 'generally represent only another way of pleading an action against an entity of

which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658,

690, n. 55 (1978)).  "As long as the government entity receives notice and an opportunity to

respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against

---

[5] However, as Hargrove is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the
Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

4

the entity." *Kentucky*, 473 U.S. at 166.  In other words, Hargrove's official capacity claims are effectively claims against the City of Philadelphia.

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights.  *See Monell*, 436 U.S. at 694.  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).  Policy is made when an individual who possesses final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.  *See Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019).  "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (internal quotation and citation omitted).  A plaintiff illustrates that a custom was the proximate cause of his injuries by demonstrating that the defendant had knowledge of similar unlawful conduct occurring in the past, that it failed to take precautions against future violations, and that its failure, at least in part, led to the defendant's injury.  *Id.*

Alternatively, a plaintiff may also state a basis for municipal liability by alleging the City failed to supervise, train, or discipline its employees properly, and alleging that said failure amounts to deliberate indifference to the constitutional rights of those affected.  *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).  "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

Hargrove's Complaint is devoid of any specific allegations connecting to a municipal

policy or custom the alleged constitutional violations he suffered. `The only allegation related to failure-to-train is that Carney failed to train her employees, but he provides no allegations in support therof. Hargrove has thus failed to state a claim against the City of Philadelphia or against the Defendants in their official capacities. *See Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." (internal quotations omitted)); *Levine v. Rodden*, Civ. A. No. 15-574, 2015 WL 2151781, at *4 (E.D. Pa. May 7, 2015) (dismissing claims where "[p]laintiff's municipal liability allegations simply paraphrase the pleading standards for municipal liability").

### 2.  Claims Against Carney

Hargrove has not stated a plausible claim against Commissioner Carney. "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . ." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Indeed, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. There are two general ways that a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates. *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015). First, a supervisor may be liable if she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). Second, a supervisor may be personally liable if she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had

knowledge of and acquiesced in the subordinate's unconstitutional conduct.  *Id*.

Here, Carney is alleged to have violated Hargrove's rights based on her alleged failure to respond adequately to his grievances and/or letter about his grievances, and her related failure to discipline or train her staff.  As noted above, Hargrove's allegations about Carney's failure to discipline or train her staff are too conclusory to state a basis for liability.  Additionally, any claims based on the handling of grievances fail because "prison inmates do not have a constitutionally protected right to a grievance process."  *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam).  Furthermore, "[m]erely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege [a] deliberate indifference claim."  *Tenon v. Dreibelbis*, 606 F. App'x 681, 688 (3d Cir. 2015) (per curiam); *Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (per curiam) ("The District Court properly determined that [Defendants] – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue].");  *Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (per curiam) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews.").  In sum, Hargrove has not stated a plausible basis for a claim against Carney.

### 3.  Claims Against Bradly

Hargrove appears to be bringing two claims against Bradly.  One claim is for denial of access to the courts in connection with Hargrove's allegations that he was not able to adequately access the law library at CFCF.  The second claim concerns Hargrove's termination from his

work assignment, allegedly in connection with his hearing impairment.[6]

### a.   Denial of Access to the Courts

Prisoners retain a right of access to the courts under the First and Fourteenth Amendments. *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). But the prisoner making an access-to-the-courts claim must show that the denial of access caused actual injury. *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). In other words, a prisoner claiming he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (per curiam) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Furthermore, the right to access the courts may be satisfied if the plaintiff has an attorney. *Diaz*, 532 F. App'x at 63; *see also Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013).

Here, Hargrove alleges that he was denied adequate access to the law library but he has not alleged any actual injury as a result of that denial. Additionally, the docket for his pending criminal matter reflects that counsel has been appointed to represent him. *See Commonwealth v. Hargrove*, CP-51-CR-0007106-2018 (C.P. Phila.). In sum, Hargrove has failed to state a plausible basis for a claim that he was denied access to the courts based on his generalized allegations that he was unable to access the law library for a sufficient period of time.

---

[6] To the extent Hargrove intended to bring a separate claim based on Bradly having spoken to him in an allegedly threatening or disrespectful manner, that claim fails because verbal harassment, although distasteful, does not amount to a constitutional violation. *See Ledcke v. Pennsylvania Dep't of Corr.*, 655 F. App'x 886, 888-89 (3d Cir. 2016) (per curiam) (detainee's "claims of verbal harassment fail[ed] as a matter of law"); *McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) ("[A]cts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment"); *Higgs v. Suey*, 2008 WL 699594, at *5 (D.N.J. Mar. 12, 2008) ("Allegations that prison personnel have used threatening language and gestures also are not cognizable claims under § 1983.").

**b.      Claims Based on Loss of Work Assignment**

Hargrove cannot state a constitutional claim based on the loss of his work assignment.

That is because inmates do not have a constitutional right to employment during incarceration.

*See Watson v. Sec'y Pa. Dep't of Corr.*, 567 F. App'x 75, 78 (3d Cir. 2014) (per curiam)

("Inmates do not have a liberty or property interest in their job assignments that would give rise

to Due Process Clause protection." (citing *James v. Quinlan*, 866 F.2d 627, 629 (3d Cir. 1989)));

*Fiore v. Holt*, 435 F. App'x 63, 68 (3d Cir. 2011) (per curiam) ("[P]risoners enjoy no protected

interest in prison employment.").  Accordingly, these constitutional claims fail.

**4.  Claims Against Cook**

Hargrove's claims against Cook are based on allegations that Cook lodged a false

disciplinary charge against him, which caused him to be housed in the RHU before he was

cleared of the charge.[7]  The United States Court of Appeals for the Third Circuit has noted that,

"[g]enerally, prisons may sanction a pretrial detainee for misconduct that he commits while

awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands

accused.'"  *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*,

172 F.3d 999, 1003-06 (7th Cir. 1999)).  With respect to pretrial detainees, "the imposition of

disciplinary segregation for violation of prison rules and regulations cannot be imposed without

providing the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 . . . (1974)."

---

[7] To the extent Hargrove intended to raise Fourth Amendment claims against Cook based on her search of his cell or seizure of his property, those claims fail because "prisoners have no legitimate expectation of privacy and . . . the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells."  *Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration.").  Additionally, Hargrove cannot state a constitutional claim based on the loss of his property.  *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) ("'[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.'" (quoting *Hudson*, 468 U.S. at 533)); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (per curiam) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property).

*Kanu*, 739 F. App'x at 116.  Such protections "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Id.* (citing *Wolff*, 418 U.S. at 563-66); *see also Stevenson v. Carroll,* 495 F.3d 62, 70 (3d Cir. 2007).

Moreover, while "the filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process," *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005) (per curiam), "[d]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports," *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (per curiam); *see also Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim.").

Hargrove alleges that Cook falsely accused him of assaulting her, which caused him to be housed in the RHU.  However, he also alleges that he was cleared within ten or eleven days after an investigation into the charge and review of the evidence.[8]  While the specifics are not entirely clear, it is apparent that the false allegation was investigated and/or that Hargrove had an opportunity to rebut the false allegation.  Indeed, he does not allege otherwise.  Rather, his claim against Cook appears to be based solely on the fact that she lodged the false accusation against him in the first place.  That, however, is not a sufficient basis for a due process claim.  *See London v. Evans*, 2019 WL 2648011, at *3 (D. Del. June 27, 2019) ("The filing of false disciplinary charges does not constitute a claim under § 1983 so long as the inmate was

---

[8] To the extent Hargrove alleges that he was wrongfully kept in the RHU after his name was cleared, it is unclear from his Complaint who was responsible for such actions.

granted a hearing and an opportunity to rebut the charges."); *King v. Quigley*, 2019 WL 342710, at *2 (E.D. Pa. Jan. 25, 2019) (dismissing detainee's due process claims upon screening, where claims were based "solely on the basis that he believe[d] the misconducts issued against him were false" and detainee did not allege he was not provided applicable protections); *McDowell v. Deparlos*, 2017 WL 1158093, at *8-*9 (M.D. Pa. Feb. 2, 2017) (dismissing detainee's due process claim based on false misconduct report where detainee did not "allege that he was not provided with an explanation for his transfer to the SMU, nor that he was denied an opportunity to respond to the transfer, and he was held there in administrative custody for only fifteen days before his disciplinary hearing occurred, not indefinitely"), *report and recommendation adopted*, 2017 WL 1134407 (M.D. Pa. Mar. 27, 2017).

## B. ADA Claim[9]

Although Hargrove has not alleged a plausible claim under § 1983, he can proceed at this time on his ADA claim against the City of Philadelphia based on the termination of his work assignment.[10] *See* 42 U.S.C. § 12132. "Title II of the ADA applies to services, programs and

---

[9] To the extent Hargrove also intended to raise a claim under § 504 of the Rehabilitation Act, that claim fails because to state a claim under § 504, a plaintiff must demonstrate that: (1) he is a qualified individual with a disability; (2) he was denied the benefits of a program or activity of a public entity which receives federal funds; and (3) he was discriminated against based on his disability. *Calloway v. Boro of Glassboro Dep't of Police*, 89 F. Supp.2d 543, 551 (D.N.J. 2000). The Complaint does not raise any allegations about federal funding, so this claim fails as pled.

[10] There is no basis for proceeding on ADA claims against the individual Defendants. Although the United States Court of Appeals for the Third Circuit has not addressed the issue precedentially, most courts "have held that Title II [of the ADA] does not authorize suits against government officers in their individual capacities." *Williams v. Hayman*, 657 F. Supp. 2d 488, 502 (D.N.J. 2008); *see also Kokinda v. Pennsylvania Dep't of Corr.*, 779 F. App'x 938, 942 (3d Cir. 2019) (per curiam) ("Kokinda's claims for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability."); *Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017) (per curiam) ("[T]he District Court could have properly followed the holdings of those circuits which have concluded that there is no individual damages liability under Title II of the ADA, which provides an additional basis to affirm the dismissal of this claim."). Furthermore, claims against the individual Defendants in their official capacities would be duplicative of the claims against the City of Philadelphia, which is already named as a Defendant. *See Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015) ("The district court correctly dismissed these defendants in their official capacity because the Staneks also sued the District."); *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) ("The district court correctly held that the § 1983 claim against Martin in his official capacity as Superintendent is essentially a claim against the Board and thus should be

activities provided within correctional institutions." *Chisolm v. McManimon*, 275 F.3d 315, 325 (3d Cir. 2001) (citing *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998)).   "To successfully state a claim under Title II of the ADA, a person 'must demonstrate: (1) he is a qualified individual; (2) with a disability; (3) [who] was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability.'" *Haberle v. Troxell*, 885 F.3d 170, 178 (3d Cir. 2018) (quoting *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 553 n. 32 (3d Cir. 2007)) (alterations in original).   "[T]he phrase 'service, program, or activity' under Title II, . . . is 'extremely broad in scope and includes anything a public entity does.'" *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 289 (3d Cir. 2019).

For purposes of screening, it is assumed that Title II of the ADA is sufficiently broad to cover Hargrove's work assignment.  *See Yeskey*, 524 U.S. at 210 ("Modern prisons provide inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be 'excluded from participation in')."); *Positano v. Pennsylvania Dep't of Corr.*, 2018 WL 3521191, at *10 (M.D. Pa. May 16, 2018) (concluding that DOC's Canine Service Provider Program was covered by Title II), *report and recommendation adopted,* 2018 WL 3495098 (M.D. Pa. July 20, 2018).  Given Hargrove's allegations that he was terminated from his work assignment as a result of a hearing impairment, which the Court assumes is a sufficient disability at the screening stage of this case, the Court will permit him to proceed on his ADA claim at this time.

---

dismissed as duplicative."); *see also Kentucky*, 473 U.S. at 166 ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

## IV.     CONCLUSION

For the foregoing reasons, Hargrove's motion for leave to proceed *in form pauperis* will be granted.  His §1983 claims will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Hargrove may proceed only on his claim against the City of Philadelphia based upon Title II of the ADA.  However, Hargrove will be given an opportunity to file an amended complaint in accordance with the Court's Order accompanying this Memorandum in the event he can cure the defects in any of his § 1983 claims.  Accordingly, service will not be directed at this time. However, if Hargrove opts not to file an amended complaint, he may notify the Court of his intention to proceed only as to his remaining claim.  An Order follows, which provides further direction about amendment.

April 22, 2020                                      BY THE COURT:

/s/Wendy Beetlestone, J.

_____
WENDY BEETLESTONE